FILED
United States Court of Appeals
Tenth Circuit

April 14, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

FRANCISCO FRANCO,

Plaintiff-Appellant,

v.

THE BOARD OF COUNTY
COMMISSIONERS FOR THE COUNTY
OF ROOSEVELT, in its official capacity;
CHARLENE WEBB, in her individual
and official capacities; DAVID
CASANOVA, in his individual and
official capacities; TAMARA PEEL, in
her individual and official capacities,

Defendants-Appellees.

No. 14-2134
(D.C. No. 2:13-CV-00714-LH-GBW)
(D.N.M.)

_____

ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

_____

After pleading guilty to two misdemeanor charges in New Mexico state court,

Francisco Franco was sentenced to two consecutive terms of supervised probation:

_____

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(1) an initial 364-day term that (2) was to be followed by a second, six-month term. Tamara Peel was assigned to supervise his probation. On March 7, 2013, the last day of the first term, Ms. Peel filed a motion for discharge with the state court indicating that Mr. Franco had been "given 364 days supervised probation" and "ha[d] completed the period of probation without revocation." App. 101. That same day, the court ordered that Mr. Franco "be discharged from the terms of probation." *Id.* But following this March 7 order, Mr. Franco continued to report to Ms. Peel and to submit to drug screening, presumably in accord with the second probationary period the court mandated. Several months later, Mr. Franco allegedly failed a drug test and was found intoxicated by a local police officer. Ms. Peel filed a motion in state court arguing that Mr. Franco violated the terms of his probation and asking the court to issue a bench warrant for his arrest. The court issued the warrant and Mr. Franco was arrested and held for about three weeks.

Some time after his release, Mr. Franco filed this action against Ms. Peel, County Manager Charlene Webb, jail administrator David Casinova, and the Roosevelt County Board of Commissioners. Among other things, he alleged that Ms. Peel had him arrested without probable cause, and that the Board and Mr. Casinova are liable for false imprisonment under state law. Underlying all of his claims is this argument: that the state court's March 7 order fully discharged him from *both* of his terms of probation.

Even if this is true, however, we agree with the district court that the defendants are still entitled to summary judgment as a matter of law. Turning first to Ms. Peel, we conclude she is entitled to qualified immunity. "Qualified immunity is an affirmative defense that protects government officials from personal liability unless their actions violate clearly established law of which a reasonable person would have known." *Coen v. Runner*, 854 F.2d 374, 377 (10th Cir. 1988). Mr. Franco claims that Ms. Peel violated clearly established law by seeking a bench warrant for his arrest without probable cause and subjecting him to probation conditions after the state court had fully discharged him from probation. But qualified immunity protects a government officer who has made a reasonable mistake of fact. *See Stonecipher v. Valles*, 759 F.3d 1134, 1141-42 (10th Cir.), *cert. denied*, 135 S. Ct. 881 (2014). And while we admit there's ambiguity in the state court's March 7 order — even the state prosecutor and a different state judge have at times suggested that it discharged both terms of probation — the relevant question is whether Ms. Peel could have reasonably concluded otherwise. On that dispositive score, we just don't see room for dispute. The March 7 order explicitly referenced the length of the first term of probation only (364 days), and Mr. Franco continued to report to Ms. Peel after the order issued. Neither does he argue that he ever suggested to Ms. Peel that he was freed from the second term of probation. Given these facts, it was reasonable for her to have believed that the order discharged only the initial 364-day term.

Mr. Franco replies that Ms. Peel is not entitled to qualified immunity because she is an independent contractor rather than a county employee. He maintains that her position with the county is like the position of the private prison guards in *Richardson v. McKnight*, 521 U.S. 399 (1997). But in holding that the guards in that case could not assert qualified immunity, *Richardson* emphasized the peculiar facts before it, a situation "in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms." *Id.* at 413. The Court itself later distinguished *Richardson* in *Filarsky v. Delia*, 132 S. Ct. 1657 (2012), noting that *Richardson* was based on the "various incentives characteristic of the private market in that case." *Id.* at 1667. In particular, *Filarsky* held that a private attorney hired by a city to assist in conducting an official investigation was entitled to qualified immunity, reasoning that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis." *Id.* at 1665. We agree with the district court that Ms. Peel's position as an independently contracted probation officer is a good deal more like the one in *Filarsky* than *Richardson*, especially given the Court's express admonition that the "typical case of an individual hired by the government to assist in carrying out its work" will fall outside *Richardson*'s exception. *Id.* at 1667.

We also affirm the grant of summary judgment on the individual capacity claims against Mr. Casinova and Ms. Webb.  Even assuming they were personally involved in Mr. Franco's detention after the state court issued the arrest warrant as Mr. Franco alleges, it's long since settled that "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order."  *Valdez v. City & County of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989).  And as we've seen, the warrant was at least that, appearing valid on its face.

To be sure, Mr. Franco also argues that the jail in which he was detained has a "policy or custom" of holding individuals without valid charges.  *Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).  But Mr. Franco's only evidence of such a policy or custom is an affidavit from George Rowan, a former jail employee.  And we agree with the district court that this affidavit is insufficient to suggest a triable question of fact.  Mr. Rowan does not describe his job responsibilities at the jail, does not indicate how he might have personal knowledge of relevant policies and procedures at the jail, and does not identify any facts that would allow a rational juror to conclude that the county had a practice of unconstitutional incarceration "so permanent and well settled as to constitute a custom or usage with the force of law."  *Bryson*, 627 F.3d at 791 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Finally, Mr. Franco points us to his state law false-imprisonment claim. Under New Mexico law, "[f]alse imprisonment consists of intentionally confining or restraining another person without his consent *and with knowledge that he has no lawful authority to do so*." N.M. Stat. Ann. § 30-4-3 (emphasis added). And before this court Mr. Franco fails to address the district court's holding that there was no evidence in this record that any defendant acted with this level of mens rea. So it is we are left without any basis on which to say the district court erred in dismissing this claim either.

Affirmed.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge